**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| CITGO PETROLEUM CORPORATION, § § § Plaintiff, § § v. § § FIDELITY & DEPOSIT COMPANY OF § MARYLAND, § § Defendant. § § | CIVIL ACTION NO.: _____ |

# EXHIBIT A

3/11/2016 5:13:16 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 9573194
By: LUGO, BONNIE
Filed: 3/11/2016 5:13:16 PM

# CIVIL CASE INFORMATION SHEET

**CAUSE NUMBER** *(FOR CLERK USE ONLY):* 2016-16171 / Court: 334   **COURT** *(FOR CLERK USE ONLY):*

**STYLED** CITGO PETROLEUM CORPORATION V. FIDELITY & DEPOSIT COMPANY OF MARYLAND
*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|
| Name:<br>Robert L. Pillow | Email:<br>robert.pillow@hoganlovells.com | Plaintiff(s)/Petitioner(s):<br>Citgo Petroleum Corporation | ☒ Attorney for Plaintiff/Petitioner<br>☐ Pro Se Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other: |
| Address:<br>700 Louisiana St., Ste. 4300 | Telephone:<br>713-632-1400 | | Additional Parties in Child Support Case:<br>Custodial Parent: |
| City/State/Zip:<br>Houston, TX 77004 | Fax:<br>713-632-1401 | Defendant(s)/Respondent(s):<br>Fidelity & Deposit Company of Maryland | Non-Custodial Parent:<br>Presumed Father: |
| Signature: | State Bar No:<br>24080315<br>/s/ Robert L. Pillow | [Attach additional page as necessary to list all parties] | |

**2. Indicate case type, or identify the most important issue in the case** *(select only 1)*:

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☐ Consumer/DTPA<br>☐ Debt/Contract<br>☐ Fraud/Misrepresentation<br>☐ Other Debt/Contract:<br>___<br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☐ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☒ Other Contract: ___ | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional Liability: ___<br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability<br>List Product: ___<br>☐ Other Injury or Damage: ___ | ☐ Eminent Domain/Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property: ___<br><br>**Related to Criminal Matters**<br>☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus—Pre-indictment<br>☐ Other: ___ | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☐ With Children<br>☐ No Children<br><br>**Other Family Law**<br>☐ Enforce Foreign Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities of Minority<br>☐ Other: ___ | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order<br><br>**Parent-Child Relationship**<br>☐ Adoption/Adoption with Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Paternity/Parentage<br>☐ Termination of Parental Rights<br>☐ Other Parent-Child: ___ |
| **Employment** | | **Other Civil** | | |
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment: ___ | ☐ Administrative Appeal<br>☒ Antitrust/Unfair Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other: ___ | | |
| **Tax** | **Probate & Mental Health** | | | |
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: ___ | | |

**3. Indicate procedure or remedy, if applicable** *(may select more than 1)*:

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court<br>☐ Arbitration-related<br>☐ Attachment<br>☐ Bill of Review<br>☐ Certiorari<br>☐ Class Action | ☒ Declaratory Judgment<br>☐ Garnishment<br>☐ Interpleader<br>☐ License<br>☐ Mandamus<br>☐ Post-judgment | ☐ Prejudgment Remedy<br>☐ Protective Order<br>☐ Receiver<br>☐ Sequestration<br>☐ Temporary Restraining Order/Injunction<br>☐ Turnover |

**4. Indicate damages sought** *(do not select if it is a family law case)*:

- ☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
- ☐ Less than $100,000 and non-monetary relief
- ☐ Over $100,000 but not more than $200,000
- ☒ Over $200,000 but not more than $1,000,000
- ☐ Over $1,000,000

Rev 2/13

Unofficial Copy Office of Chris Daniel District Clerk

3/11/2016 5:13:16 PM
Chris Daniel - District Clerk Harris County
Envelope No. 9573194
By: Bonnie Lugo
Filed: 3/11/2016 5:13:16 PM

**2016-16171 / Court: 334**

Cause No. _____

| | | |
|---|---|---|
| CITGO PETROLEUM CORPORATION, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| FIDELITY & DEPOSIT COMPANY | § | |
| OF MARYLAND, | § | |
| | § | |
| Defendant. | § | ____ JUDICIAL DISTRICT |

### PLAINTIFF'S ORIGINAL PETITION
### AND REQUEST FOR DISCLOSURE

Plaintiff, CITGO Petroleum Corporation ("CITGO"), files this Original Petition and Request for Disclosure against Defendant Fidelity & Deposit Company of Maryland ("F&D") and in support thereof respectfully shows the following:

### Discovery Level

1. Discovery in this case is intended to be conducted under Level 2, as set forth in Rule 190.3 of the Texas Rules of Civil Procedure.

### Parties

2. Plaintiff CITGO Petroleum Corporation ("CITGO") is a Delaware corporation with its principal place of business in Houston, Texas.

3. Defendant F&D is a foreign insurance company registered with the Texas Department of Insurance. F&D engages in the business of insurance in Texas. F&D can be served with process according to the laws of the State of Texas by serving its registered agent,

Corporation Service Company, at the address 211 East 7th Street Suite 620, Austin, TX 78701-3218.

### Jurisdiction and Venue

4. This Court has jurisdiction over this action because the amount in controversy exceeds the minimum jurisdictional amount.

5. Venue is proper in Harris County, Texas, pursuant to Texas Civil Practice and Remedies Code § 15.002(a)(1), because all or a substantial part of the events or omissions giving rise to CITGO's claim occurred in Harris County.

6. All conditions precedent to the filing of this cause of action have been satisfied.

### Summary

7. This is a declaratory judgment action seeking to confirm F&D's obligations under a surety bond issued for the benefit of CITGO to secure payment to CITGO under certain underlying contracts, as described further below.

### Surety Bonds

8. A surety bond is a contract involving at least three parties under which the surety (in this case, F&D) guarantees performance of a third party for the benefit of an obligee (in this case, CITGO). The third party to the surety bond is the principal party who owes performance obligations to the obligee. That is, under a surety bond, the surety guarantees to protect and cover the obligee against losses resulting from the principal's failure to meet its obligations to the obligee.

2

## Facts

9. On September 3, 2014, F&D issued Gas-Mart USA, Inc. ("Gas-Mart") a surety bond relating to a certain Marketer Franchise Agreement ("MFA") and related contracts between CITGO and its gasoline distributor/customer Gas-Mart. The MFA and the related contracts between CITGO and Gas-Mart are referred to hereafter as "the underlying contracts." The bond issued by F&D is referred to hereafter as the "Surety Bond." The Surety Bond and F&D's obligations under that Bond are the subjects of this litigation.

### The Underlying Contracts between Gas-Mart and CITGO

10. On September 10, 2013, CITGO and Gas-Mart executed the MFA, in which Gas-Mart agreed to purchase and lift specified quantities of motor fuels from CITGO, and CITGO agreed to sell and deliver the motor fuels to Gas-Mart. Gas-Mart agreed to pay CITGO for the motor fuels within ten (10) days of each invoice and in accordance with the terms prescribed by CITGO's Credit Department. MFA § 5(a). Upon CITGO's request, Gas-Mart was obligated to furnish CITGO with additional security or collateral in order to maintain a credit limit. MFA § 5(b).

11. The MFA granted Gas-Mart the right to use CITGO's brand names and trademarks in connection with the resale of CITGO motor fuels to retailers and consumers. MFA § 6. CITGO furnished Gas-Mart with CITGO brand identification items ("Branding Materials") for use at CITGO-branded retail locations ("Locations") supplied by Gas-Mart. These Branding Materials included items bearing CITGO's brand names, trademarks, and other forms of CITGO identification.

3

12. Gas-Mart is obligated to reimburse CITGO for the Branding Materials in the event that any of the Locations are debranded. Under the MFA, all CITGO Branding Materials furnished by CITGO to any Location, including installation costs, "shall be amortized over a sixty (60) month period on a straight-line basis." MFA § 6(j). "Should any such Location be debranded within the sixty (60) month amortization period, [Gas-Mart] shall pay to CITGO the unamortized portion of the costs associated with the CITGO Branding Material as of the date of debranding." MFA § 6(j). As used in the MFA, the term "debranding" includes the cessation of supply of branded fuel to the Location at any point during the amortization period.

13. CITGO and Gas-Mart entered into a Competitive Allowance Agreement ("CAA") on October 23, 2013, which modified and expanded their existing obligations under the MFA. As set forth more fully in the CAA, CITGO agreed to make payments to Gas-Mart for each Location after Gas-Mart met certain branding obligations for that Location ("Upfront Allowances"). CAA § 1. CITGO also agreed to pay Per Gallon Allowances to Gas-Mart based on the volume of fuel sold at each Location listed in the CAA so long as Gas-Mart completed the branding process and lifted the quantities of fuel required by the MFA and CAA for that Location. *See* CAA § 4. These Per Gallon Allowances are essentially rebates provided to Gas-Mart from CITGO, calculated on a per-gallon basis. Additionally, the CAA extended the MFA's amortization schedule for the Branding Materials from 60 months to 120 months.

14. Under the CAA, if Gas-Mart debranded or ceased supplying any of the Locations listed in the CAA within four years, then Gas-Mart would be required to reimburse CITGO 100% of both the Upfront Allowances and the Per Gallon Allowance payments. CAA § 6. The CAA also required Gas-Mart to reimburse CITGO for any costs CITGO incurred in branding a

4

Location, including the cost of the Branding Materials and any installation costs, if that Location debranded. CAA § 7. In total, CITGO paid over $3 million in Upfront Allowances and Per Gallon Allowances to Gas-Mart.

### Gas-Mart's First Missed Payment and F&D's Guaranty of Future Performance

15. CITGO and Gas-Mart conducted business under the underlying contracts until Gas-Mart missed a payment in August 2014. Its designated bank account contained insufficient funds when CITGO made an electronic funds transfer ("EFT") request for a pending fuel invoice, and CITGO's EFT request was returned unpaid. Gas-Mart eventually paid the past-due invoice, but CITGO demanded that Gas-Mart provide additional security for future credit transactions under Section 5(b) of the MFA. Gas-Mart arranged to obtain the required security in the form of a surety bond issued by F&D.

16. On September 3, 2014, F&D executed the Surety Bond for the benefit of CITGO. Under the Surety Bond, F&D expressly guaranteed that if Gas-Mart defaulted on the underlying contracts by failing to remit payment for motor fuels, then F&D would pay CITGO any unpaid portions due to CITGO pursuant to the underlying contracts, up to the "Penal Sum" of one million dollars. The parties subsequently increased the Penal Sum to $1.5 million on September 9, 2014. After the Surety Bond was issued and increased, CITGO and Gas-Mart resumed their normal business relationship until July 2015.

### Gas-Mart Missed another Payment and Filed for Bankruptcy

17. In July 2015, Gas-Mart again defaulted on the underlying contracts by failing to make timely payments for fuel purchases. On July 1, 2015, CITGO discovered that an EFT for

5

over $218,000 was returned unpaid. In accordance with the terms of the underlying contracts, CITGO promptly notified Gas-Mart of its breach and demanded payment in full. Gas-Mart informed CITGO that it was in a dispute with its bank and its funds were inaccessible. As permitted under the terms of the MFA, CITGO denied Gas-Mart access to CITGO's fuel terminals. On July 2, 2015, Gas-Mart filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. At that time, Gas-Mart owed $977,581.30 to CITGO for fuel purchases and other related expenses. Pursuant to the terms of the Surety Bond, CITGO notified F&D of Gas-Mart's breach of contract and demanded that F&D reimburse CITGO for Gas-Mart's total outstanding, unpaid debt.

18. Because the supply of CITGO motor fuels was critical to Gas-Mart's continued business operations, the parties negotiated and entered into a Critical Vendor Agreement on August 6, 2015. The parties agreed that CITGO would use pre-petition credit card payment receipts to offset $221,190.12 against its gross outstanding claim. The parties further agreed that CITGO would apply the $221,190.12 in credit card receipts against the oldest outstanding invoice on Gas-Mart's account. Finally, the parties agreed that the remaining balance of $756,391.18 would be paid by F&D pursuant to the Surety Bond, reducing the Penal Sum of the Surety Bond to $743,608.82. In exchange, CITGO agreed to resume the sale and delivery of motor fuels to Gas-Mart on credit pursuant to the underlying contracts. F&D remitted payment to CITGO on August 12, 2015 for $756,391.18, and CITGO resumed credit sales to Gas-Mart.

19. Meanwhile, Gas-Mart's bankruptcy proceedings continued. In or around December 2015, Gas-Mart's debtor-in-possession ("DIP") lenders rejected Gas-Mart's request for additional DIP financing and ordered Gas-Mart to sell its assets and dissolve. The court-

supervised asset sale was completed in February 2016, and Gas-Mart is in the process of winding up.

### Gas-Mart Breached its Payment Obligations Again

20.     On February 15, 2016, CITGO again discovered that an EFT for one of Gas-Mart's outstanding fuel purchase invoices was returned unpaid. When CITGO contacted Gas-Mart to demand payment, Gas-Mart informed CITGO that it could not satisfy its payment obligations and advised CITGO to rely on the Surety Bond from F&D. Gas-Mart has since ceased supplying motor fuels to CITGO-branded Locations, and these stations have been transferred to other gasoline distributors, closed, or otherwise debranded.

21.     Because Gas-Mart is no longer supplying any branded CITGO stations, Gas-Mart is obligated to reimburse CITGO for the cost of the Branding Materials furnished by CITGO to Gas-Mart pursuant to the underlying contracts. MFA § 6(j). Additionally, Gas-Mart is obligated to reimburse CITGO for the Upfront Allowances and Per Gallon Allowances in accordance with the CAA. *See* CAA § 6.

22.     Following the return of CITGO's EFT to Gas-Mart, Gas-Mart informed CITGO that it was unable to perform its obligations to CITGO under the underlying contracts and directed CITGO to seek repayment from F&D under the Surety Bond. At the time of filing, Gas-Mart's total outstanding debt to CITGO exceeds $2.8 million. Furthermore, CITGO expects to receive no proceeds towards its $6.8 million claim in Gas-Mart's pending bankruptcy proceeding because Gas-Mart's estate is administratively insolvent. This has no bearing, however, on F&D's payment obligations to CITGO under the Surety Bond.

**The Surety Bond Obligates F&D to Reimburse CITGO**

23. CITGO fully performed its obligations under the underlying contracts and is owed millions of dollars by Gas-Mart, which is now significantly past due.

24. The Surety Bond provides that in the event Gas-Mart defaults on the underlying contracts by failing to remit payment for motor fuels, then F&D "shall pay [CITGO] within thirty (30) days after [CITGO's] request in an amount equivalent to any unpaid portions due to [CITGO] pursuant to said Agreement but not to exceed the Penal Sum of this Bond."

25. The remaining Penal Sum available under the Surety Bond is $743,608.82 because F&D remitted $756,391.18 to CITGO on August 12, 2015 pursuant to the Critical Vendor Agreement.

26. In accordance with the terms of the Surety Bond, CITGO notified F&D of Gas-Mart's breach of contract. CITGO demanded performance from F&D and requested reimbursement in the amount of $743,532.63, as promised in the Surety Bond. CITGO fully performed all of its obligations under the Surety Bond. Consequently, F&D is obligated to pay CITGO $743,532.63.

27. CITGO has reason to doubt that F&D will fully comply with its obligations under the Surety Bond. F&D indicated in previous communications that it interprets the scope of the Surety Bond to exclude certain covenants made by Gas-Mart to CITGO in the CAA and MFA. The issue of whether these covenants are covered by the Surety Bond is critically important in determining the amount owed by F&D to CITGO under that agreement. CITGO's rights and status under the Surety Bond are therefore at risk, and a declaratory judgment issued by the court will resolve the controversy between CITGO and F&D.

### Cause of Action: Declaratory Judgment

28. CITGO hereby incorporates paragraphs 1 through 27 as though fully set forth herein.

29. Despite the clear language in the Surety Bond, F&D has not acknowledged the full extent of its obligations to CITGO and has offered a competing interpretation of these obligations. An actual controversy has therefore arisen and now exists between the Parties regarding F&D's obligations under the Surety Bond.

30. In accordance with Chapter 37 of the Texas Civil Practice and Remedies Code, Plaintiff seeks a declaration from the Court that the Surety Bond is a valid and binding agreement that obligates F&D to pay CITGO up to the total Penal Sum all amounts due and owing to CITGO by Gas-Mart pursuant to the underlying contracts.

31. CITGO also seeks to recover its attorneys' fees and costs, as provided in Texas Civil Practice and Remedies Code § 37.009.

### Request for Disclosure

32. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, CITGO requests that F&D disclose, within fifty (50) days of service of this request, all of the information or material described in Rule 194.2.

### Demand for Trial by Jury

33. CITGO hereby demands trial by jury and is tendering the jury fee with this Petition.

## Prayer

For the above reasons, Plaintiff CITGO Petroleum Corporation asks that Defendant F&D be cited and made to appear herein and answer the above allegations, and that judgment be rendered in favor of Plaintiff:

a) A declaration that:

   i. The Surety Bond is a valid and binding agreement that obligates F&D to pay CITGO up to the total Penal Sum all amounts due and owing to CITGO by Gas-Mart pursuant to the underlying contracts.

b) Reasonable attorneys' fees;

c) Costs of suit;

d) Pre- and post-judgment interest; and

e) Such other and further relief to which CITGO may show itself to be justly entitled.

Respectfully submitted,

By: /s/ Aaron Crane
Aaron R. Crane
State Bar No. 24050459
Robert L. Pillow
State Bar No. 24080315
**HOGAN LOVELLS US, L.L.P.**
700 Louisiana, Suite 4300
Houston, Texas 77002
T (713) 632-1400
D (713) 632-1446
F (713) 632-1401

**Counsel for CITGO Petroleum Corporation**

3/14/2016 12:21:25 PM
Chris Daniel - District Clerk Harris County
Envelope No. 9588515
By: Bonisha Evans
Filed: 3/14/2016 12:21:25 PM

Hogan Lovells US LLP
Bank of America Center
700 Louisiana Street, Suite 4300
Houston, TX 77002
T +1 713 632 1400
F +1 713 632 1401
www.hoganlovells.com

March 14, 2016

District Court Clerk
Harris County Civil Courthouse
201 Caroline, 14th Floor
Houston, Texas 77002

Re: CITGO Petroleum Corp. v. F&D Company of Maryland
Cause No. 2016-16171; 334th Judicial District of Harris County, Texas

Dear Clerk:

I am writing to request a Citation for the Petition filed March 11, 2016 in the above-captioned matter. The Citation cost is $8.00 and we will be paying the fee with the electronic filing of this letter. I am also requesting copies for the Petition and will pay the fee of $2.50 ($0.25 per page) for this request with the filing of this letter.

We have designated the below process server to serve the Petition:

Sparre Process Servicing, LLC
500 E. 4th Street, Suite 143
Austin, Texas 78701
(512) 522-5625

Please let me know if you have any questions or require any additional information.

Sincerely,

/s/ Robert L. Pillow

Robert L. Pillow

Associate
robert.pillow@hoganlovells.com
(713) 632-1456

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante Amsterdam Baltimore Beijing Brussels Caracas Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Moscow Munich New York Northern Virginia Paris Perth Philadelphia Rio de Janeiro Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Sydney Tokyo Ulaanbaatar Warsaw Washington DC Associated offices: Budapest Jeddah Riyadh Zagreb. For more information see www.hoganlovells.com

CONFIRMED FILE DATE: 3/14/2016



# CHRIS DANIEL
HARRIS COUNTY DISTRICT CLERK

ENTERED
VERIFIED _wc_

## Civil Process Pick-Up Form

CAUSE NUMBER: 2016-16171

ATY _____  CIV _____  COURT: 334

**REQUESTING ATTORNEY/FIRM NOTIFICATION**

*ATTORNEY: Crane, Aaron  *PH: 713-632-1400

*CIVIL PROCESS SERVER: Sparre Process Servicing llc

*PH: 512.522.5625

*PERSON NOTIFIED SVC READY: _____

* NOTIFIED BY: Attorney @ 9:10 am

*DATE: 3-16-16

Type of Service Document: CTR  Tracking Number 73226214
Type of Service Document: _____  Tracking Number _____
Type of Service Document: _____  Tracking Number _____
Type of Service Document: _____  Tracking Number _____
Type of Service Document: _____  Tracking Number _____
Type of Service Document: _____  Tracking Number _____
Type of Service Document: _____  Tracking Number _____

Process papers prepared by: **BONISHA EVANS**

Date: 3-14-2016   30 days waiting 4-14-2016

*Process papers released to: Joseph Cohen (PRINT NAME)

713-867-0100
*(CONTACT NUMBER)   (SIGNATURE)

*Process papers released by: Shaniece Richardson (PRINT NAME)

Shaniece Richardson (SIGNATURE)

* Date: 3-16-2016   Time: 1044  AM / PM