IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CITGO PETROLEUM CORPORATION,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:16-cv-00952 |
| **FIDELITY & DEPOSIT COMPANY OF MARYLAND,** | § § § § | |
| Defendant. | § § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, CITGO Petroleum Corporation, files this First Amended Complaint against Defendant Fidelity & Deposit Company of Maryland and in support thereof respectfully shows the following:

### Parties

1. Plaintiff CITGO Petroleum Corporation ("CITGO") is a Delaware corporation with its principal place of business in Houston, Texas.

2. Defendant Fidelity & Deposit Company of Maryland ("F&D") is a foreign insurance company registered with the Texas Department of Insurance. F&D has already appeared in this proceeding.

### Jurisdiction and Venue

3. Jurisdiction is proper because CITGO and Defendant are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000. 28 U.S.C. § 1332.

\\DE - 032041/000149 - 1101343 v1

4.	Defendant is subject to personal jurisdiction in Texas because the claims in this case arise out of its contacts with Texas. Those contacts include the performance of a certain contract in Texas. The claims asserted by CITGO against Defendant arise from its obligations under this agreement and thus relate to or arise from Defendant's activities in Texas. Accordingly, Defendant is subject to specific jurisdiction in Texas for claims relating to or arising out of the agreement.

5.	Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in the Southern District of Texas. As such, this matter is properly before this Court.

6.	All conditions precedent to the filing of this cause of action have been satisfied.

## Surety Bonds

7.	This action seeks to enforce F&D's obligations to CITGO under a surety bond. A surety bond is a contract involving at least three parties under which the surety (in this case, F&D) guarantees performance of a third party for the benefit of an obligee (in this case, CITGO). The third party to the surety bond is the principal party who owes performance obligations to the obligee. That is, under a surety bond, the surety guarantees to protect and cover the obligee against losses resulting from the principal's failure to meet its obligations to the obligee.

## Facts

8.	On September 3, 2014, F&D issued Gas-Mart USA, Inc. ("Gas-Mart") a surety bond relating to a certain Marketer Franchise Agreement ("MFA") and subsequent modifications of that agreement between CITGO and its gasoline distributor/customer Gas-Mart. The MFA and the subsequent modifications of the contractual relationship in the MFA between CITGO and Gas-Mart are referred to hereafter as "the underlying agreements." The bond issued by F&D

2

is referred to hereafter as the "Surety Bond." The Surety Bond and F&D's obligations under that Bond are the subjects of this litigation.

**The Underlying Agreements between Gas-Mart and CITGO**

9. On September 10, 2013, CITGO and Gas-Mart executed the MFA, in which Gas-Mart agreed to purchase and lift specified quantities of motor fuels from CITGO, and CITGO agreed to sell and deliver the motor fuels to Gas-Mart. Gas-Mart agreed to pay CITGO for the motor fuels within ten days of each invoice and in accordance with the terms prescribed by CITGO's Credit Department. MFA § 5(a). Upon CITGO's request, Gas-Mart was obligated to furnish CITGO with additional security or collateral in order to maintain a satisfactory credit limit. MFA § 5(b).

10. The MFA granted Gas-Mart the right to use CITGO's brand names and trademarks in connection with the resale of CITGO motor fuels to retailers and consumers. MFA § 6. CITGO furnished Gas-Mart with CITGO brand identification items ("Branding Materials") for use at CITGO-branded retail locations ("Locations") supplied by Gas-Mart. These Branding Materials included items bearing CITGO's brand names, trademarks, and other forms of CITGO identification.

11. Gas-Mart is obligated to reimburse CITGO for the Branding Materials in the event that any of the Locations are debranded within five years. Under the MFA, all CITGO Branding Materials furnished by CITGO to any Location, including installation costs, "shall be amortized over a sixty (60) month period on a straight-line basis." MFA § 6(j). "Should any such Location be debranded within the sixty (60) month amortization period, [Gas-Mart] shall pay to CITGO the unamortized portion of the costs associated with the CITGO Branding Material as of the date of debranding." MFA § 6(j). As used in the MFA, the term "debranding"

3

includes the cessation of supply of branded fuel to the Location at any point during the amortization period.

12. CITGO and Gas-Mart entered into a Competitive Allowance Agreement ("CAA") on October 23, 2013, which modified and expanded their existing obligations under the MFA. As set forth more fully in the CAA, CITGO agreed to make payments to Gas-Mart for each Location after Gas-Mart met certain branding obligations for that Location ("Upfront Allowances"). CAA § 1. CITGO also agreed to pay Per Gallon Allowances to Gas-Mart based on the volume of fuel sold at each Location listed in the CAA so long as Gas-Mart completed the branding process and lifted the quantities of fuel required by the MFA and CAA for that Location. *See* CAA § 4. These Per Gallon Allowances are essentially rebates provided to Gas-Mart from CITGO, calculated on a per-gallon basis. Additionally, the CAA extended the MFA's amortization schedule for the Branding Materials from 60 months to 120 months.

13. Under the CAA, if Gas-Mart debranded or ceased supplying any of the Locations listed in the CAA within four years, then Gas-Mart would be required to reimburse CITGO 100% of both the Upfront Allowances and the Per Gallon Allowance payments. CAA § 6. The CAA also required Gas-Mart to reimburse CITGO for any costs CITGO incurred in branding a Location, including the cost of the Branding Materials and any installation costs, if that Location debranded. CAA § 7. In total, CITGO paid over $3 million in Upfront Allowances and Per Gallon Allowances to Gas-Mart.

**Gas-Mart's First Missed Payment and F&D's Guaranty of Future Performance**

14. CITGO and Gas-Mart conducted business under the underlying agreements until Gas-Mart missed a payment in August 2014. Its designated bank account contained insufficient funds when CITGO made an electronic funds transfer ("EFT") request for a pending fuel

4

invoice, and CITGO's EFT request was returned unpaid. Gas-Mart eventually paid the past-due invoice, but CITGO demanded that Gas-Mart provide additional security for future credit transactions under Section 5(b) of the MFA. CITGO also desired additional security to secure Gas-Mart's potential payment obligations to CITGO for the unamortized Branding Materials, Upfront Allowances, and Per Gallon Allowances in the event that Gas-Mart's Locations were debranded. Gas-Mart arranged to obtain the required security in the form of a surety bond issued by F&D.

15. On September 3, 2014, F&D executed the Surety Bond for the benefit of CITGO. Under the Surety Bond, F&D expressly guaranteed that if Gas-Mart defaulted on the underlying agreements by failing to remit payment for motor fuels, then F&D would pay CITGO any unpaid portions due to CITGO pursuant to the underlying agreements, up to the "Penal Sum" of one million dollars. The Parties understood this obligation to include all amounts due and owing by Gas-Mart to CITGO pursuant to the underlying agreements, including items necessary for the sale of said motor fuels such as Branding Materials, branding costs, and allowances. The parties subsequently increased the Penal Sum to $1.5 million on September 9, 2014. After the Surety Bond was issued and increased, CITGO and Gas-Mart resumed their normal business relationship until July 2015.

**Gas-Mart Missed another Payment and Filed for Bankruptcy**

16. In July 2015, Gas-Mart again defaulted on the underlying agreements by failing to make timely payments for fuel purchases. On July 1, 2015, CITGO discovered that an EFT for over $218,000 was returned unpaid. In accordance with the terms of the underlying agreements, CITGO promptly notified Gas-Mart of its breach and demanded payment in full. Gas-Mart informed CITGO that it was in a dispute with its bank and its funds were inaccessible. As

permitted under the terms of the MFA, CITGO denied Gas-Mart access to CITGO's fuel terminals. On July 2, 2015, Gas-Mart filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. At that time, Gas-Mart owed $977,581.30 to CITGO. Pursuant to the terms of the Surety Bond, CITGO notified F&D of Gas-Mart's breach of contract and demanded that F&D reimburse CITGO for Gas-Mart's total outstanding, unpaid debt.

17. Because the supply of CITGO motor fuels was critical to Gas-Mart's continued business operations, the parties negotiated and entered into a Critical Vendor Agreement on August 6, 2015. The parties agreed that CITGO would use pre-petition credit card payment receipts to offset $221,190.12 against its gross outstanding claim. The parties further agreed that CITGO would apply the $221,190.12 in credit card receipts against the oldest outstanding invoice on Gas-Mart's account. Finally, the parties agreed that the remaining balance of $756,391.18 would be paid by F&D pursuant to the Surety Bond, reducing the Penal Sum of the Surety Bond to $743,608.82. In exchange, CITGO agreed to resume the sale and delivery of motor fuels to Gas-Mart on credit pursuant to the underlying agreements. F&D remitted payment to CITGO on August 12, 2015 for the full outstanding balance of $756,391.18, and CITGO resumed credit sales to Gas-Mart.

18. Meanwhile, Gas-Mart's bankruptcy proceedings continued. In or around December 2015, Gas-Mart's debtor-in-possession ("DIP") lenders rejected Gas-Mart's request for additional DIP financing and ordered Gas-Mart to sell its assets and dissolve. The court-supervised asset sale was completed in February 2016, and Gas-Mart is in the process of winding up.

**Gas-Mart Breached its Payment Obligations Again**

19. On February 15, 2016, CITGO again discovered that an EFT for one of Gas-Mart's outstanding fuel purchase invoices was returned unpaid. When CITGO contacted Gas-Mart to demand payment, Gas-Mart informed CITGO that it could not satisfy its payment obligations and advised CITGO to rely on the Surety Bond from F&D. Gas-Mart has since ceased supplying motor fuels to CITGO-branded Locations, and these stations have been transferred to other gasoline distributors, closed, or otherwise debranded.

20. Because Gas-Mart is no longer supplying any branded CITGO stations, Gas-Mart is obligated to reimburse CITGO for the cost of the Branding Materials furnished by CITGO to Gas-Mart pursuant to the underlying agreements. MFA § 6(j). Additionally, Gas-Mart is obligated to reimburse CITGO for the Upfront Allowances and Per Gallon Allowances in accordance with the CAA. *See* CAA § 6.

21. At the time of filing, Gas-Mart's current outstanding debt to CITGO exceeds $2.8 million. Furthermore, CITGO expects to receive no proceeds towards its $6.8 million claim in Gas-Mart's pending bankruptcy proceeding because Gas-Mart's estate is administratively insolvent. This has no bearing, however, on F&D's payment obligations to CITGO under the Surety Bond.

**The Surety Bond Obligates F&D to Reimburse CITGO**

22. CITGO fully performed its obligations under the underlying agreements and is owed millions of dollars by Gas-Mart, which is now significantly past due.

23. The Surety Bond provides in relevant part:

WHEREAS, the Principal [Gas-Mart] and the Obligee [CITGO] have entered into that certain Marketer Franchise Agreement (Agreement Number: _____) dated September 10, 2013, hereinafter called the "Agreement" as the same may be subsequently modified, amended, or extended, for the purchase of a minimum amount of the monthly quantity of

7

CITGO-branded gasoline, hereinafter called the "Gasoline" as defined in said Agreement;

WHEREAS, the Obligee has requested the Principal to furnish security, which may be satisfied by the use of a surety bond in the form and tenor of this instrument; and

WHEREAS, that in the event the Principal defaults under the Agreement terms by failing to remit payment for Gasoline, the Surety [F&D] shall pay the Obligee within thirty (30) days after Obligee's request in an amount equivalent to any unpaid portions due to Obligee pursuant to said Agreement but not to exceed the Penal Sum of this Bond.

24. In accordance with the terms of the Surety Bond, CITGO notified F&D of Gas-Mart's breach of contract and demanded full payment under the Surety Bond in the amount of $743,532.63 from F&D on March 10, 2016. At that time, the remaining Penal Sum available under the Surety Bond was $743,608.82 because F&D remitted $756,391.18 to CITGO on August 12, 2015 pursuant to the Critical Vendor Agreement. F&D responded on April 6, 2016 and asserted that the Surety Bond obligates F&D to pay CITGO only $35,367.31, which is a mere fraction of the amount owed by Gas-Mart to CITGO pursuant to the underlying agreements. F&D made one payment in the amount of $35,367.31, but has failed to fully perform its obligations to CITGO under the terms of the Surety Bond. CITGO fully performed all of its obligations under the Surety Bond. F&D is therefore in breach of that agreement. As of April 19, 2016, the sum of $708,165.32 was due and owing from F&D to CITGO, exclusive of attorneys' fees, costs, expenses, or interest. CITGO's damages are increasing daily.

## CLAIMS AND CAUSES OF ACTION

### Count I: Declaratory Judgment

25. CITGO hereby incorporates paragraphs 1 through 24 as though fully set forth herein.

26. Despite the clear language in the Surety Bond, F&D has not acknowledged the full extent of its obligations to CITGO and has offered a competing interpretation of these

8

obligations. An actual controversy has therefore arisen and now exists between the Parties regarding F&D's obligations under the Surety Bond.

27. In accordance with 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, Plaintiff seeks a declaration from the Court that the Surety Bond is a valid and binding agreement that obligates F&D to pay CITGO up to the total Penal Sum all amounts due and owing to CITGO by Gas-Mart pursuant to the underlying agreements.

28. CITGO also seeks to recover its attorneys' fees and costs.

**Count II: Breach of Contract**

29. CITGO hereby incorporates paragraphs 1 through 24 as though fully set forth herein.

30. The Surety Bond is a valid contract, and it is enforceable by and binding upon Defendant and CITGO.

31. Under the terms of the Surety Bond, Defendant agreed to pay CITGO all amounts due to CITGO by Gas-Mart pursuant to the underlying agreements in the event that Gas-Mart breached those contracts by failing to pay for motor fuels that it purchased from CITGO.

32. Gas-Mart failed to pay for motor fuels that it purchased from CITGO pursuant to the underlying agreements.

33. CITGO has fully performed its obligations as required by the Surety Bond.

34. Despite demand, Defendant has failed to fulfill its payment obligations to CITGO.

35. Defendant's failure to perform is not excused by any reason.

36. Defendant's failure to pay the amounts due and owing to CITGO constitutes a breach of contract. CITGO has sustained damages because of Defendant's breach and is therefore entitled to recover monetary damages, as well as attorneys' fees, interest, and costs.

**Attorneys' Fees**

37. CITGO is represented by Hogan Lovells US, L.L.P. in this matter.

38. CITGO presented its claim for payment under the Surety Bond to Defendant on March 10, 2016.

39. More than 30 days have passed since CITGO presented its claim, and Defendant has failed to tender payment.

40. CITGO is entitled to recover reasonable attorneys' fees under the provisions of Tex. Civ. Prac. & Rem. Code Ann. § 38.001 *et seq*.

**Prayer**

For the above reasons, Plaintiff CITGO Petroleum Corporation asks that Defendant F&D be cited and made to appear herein and answer the above allegations, and that judgment be rendered in favor of Plaintiff:

a) A declaration that:

   a. The Surety Bond is a valid and binding agreement that obligates F&D to pay CITGO up to the total Penal Sum all amounts due and owing to CITGO by Gas-Mart pursuant to the underlying agreements.

b) A judgment that Defendant breached its obligations under the Surety Bond by failing to remit full payment for all amounts due and owing by Gas-Mart to CITGO pursuant to the underlying agreements and is accordingly liable to CITGO for all lawful monetary damages;

c) Reasonable attorneys' fees;

d) Costs of suit;

e) Pre- and post-judgment interest; and

  f) Such other and further relief to which CITGO may show itself to be justly entitled.

            Respectfully submitted,

         By: */s/ Aaron R. Crane*
           Aaron R. Crane
           Attorney-in-Charge
           State Bar No. 24050459
           Southern District ID No. 619093
           Of Counsel:
           Robert L. Pillow
           State Bar No. 24080315
           Southern District ID No. 2258484
           **HOGAN LOVELLS US, L.L.P.**
           700 Louisiana, Suite 4300
           Houston, Texas  77002
           T (713) 632-1400
           D (713) 632-1446
           F (713) 632-1401

           **Counsel for CITGO Petroleum Corporation**

## CERTIFICATE OF SERVICE

   I hereby certify that on the 4th day of May, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF system which will send notification of such filing to the following:

Michael Keeley
Andrew F. Carter
Strasburger & Price, LLP
901 Main Street, Suite 4300
Dallas, TX 75202-3794

*Counsel for Defendant*

               */s/ Robert L. Pillow*
               Robert L. Pillow